IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

STEVEN MCCLOUD,                                             Civil No. 11-3122-CL

        Plaintiff,                                          REPORT AND RECOMMENDATION

    v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY

        Defendant

CLARKE, Magistrate Judge:

    Plaintiff Steven McCloud brings this action under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq, alleging wrongful denial of long-term disability benefits. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). Before the Court are the parties' cross motions for summary judgment. For the reasons set forth below, the Court recommends that the plaintiff's motion for summary judgment be denied and defendant's motion for summary judgment be granted.

Page 1 - REPORT AND RECOMMENDATION

## BACKGROUND

Plaintiff Steven McCloud (McCloud) worked for American International Group, Inc. (AIG) until October 6, 2006, when he submitted a claim for disability benefits based on depression and bipolar disorder. AR 530-31, 534-35.[1] The claims administrator for AIG's Group Benefit Plan (Plan) is the defendant, Hartford Life and Accident Insurance Company (Hartford).

Hartford originally approved McCloud's claim for disability benefits based on a medical report showing that he suffered from depression and bipolar disorder that prevented him from working his job as a claims adjuster. AR 530-31, 534-35. As a "mental illness," this condition entitled him to 24 months of long term disability benefits under the Plan. AR 21. With just under four months remaining under this limitation, Hartford informed McCloud that his benefits were nearing exhaustion and would be terminated on April 9, 2009. AR 336-39.

Shortly thereafter, his treating physician, Dr. Yolanda Suarez, notified Hartford of McCloud's heart condition, for which he was hospitalized, and which prevented him from physical activity. AR 266-67. Dr. Suarez's statement included a physical capabilities evaluation (PCE); her assessment was that McCloud had the ability to "sit, stand, and/or walk one hour at a time, with each activity limited to one hour per day." AR 267.

As a physical disability, the heart condition qualified McCloud for benefits outside of the 24-month limitation. AR 237. Hartford therefore stopped the timer on his disability benefits, and McCloud continued to receive them without tolling the limitation. Id. Hartford advised McCloud

---

[1] "AR" citations are to the administrative record, which can be found in ECF No. 16, Attachment 2, Exhibit B (1-12).

Page 2 - REPORT AND RECOMMENDATION

at the time of this determination that, should his physical condition resolve, he would have 78 days remaining under his 24 month eligibility for disability for a mental illness. Id.

On August 19, 2009, Dr. Suarez submitted an updated PCE to Hartford based on her evaluation of McCloud. AR 206-07. Dr. Suarez determined that McCloud could: Sit up to eight hours in a workday, for thirty minutes at a time; stand up to four hours in a workday, for fifteen to thirty minutes at a time; walk up to three hours in a workday, for fifteen to thirty minutes at a time; drive up to two hours in a workday; lift, push or pull up to 20 pounds frequently. Id. He was not capable of climbing or crawling, but was capable of balancing, stooping, kneeling and crouching occasionally, reaching occasionally at waist level and above, but never below waist level; handling, fingering, and feeling constantly. Id. Based on this evaluation, along with an Employability Analysis Report, and the rest of McCloud's file, Hartford determined that McCloud no longer met the plan's definition of disability based on a physical condition. AR 198-202. Thus, the 24 month limitation went back into effect, and Hartford continued to pay benefits to McCloud for his disability based on a mental illness until they were exhausted on November 6, 2009. AR 201.

McCloud appealed the decision to terminate his physical disability benefits, and in June 2010 he submitted supplemental documentation to support his claim, including medical reports from his currently treating physicians. AR 80, 126. Hartford then referred McCloud's claim file to the University Disability Consortium (UDC) for a medical records review. AR 101-02. Dr. James H. Bress prepared a written report for UDC dated June 30, 2010 reviewing all of the medical records provided. AR 67-74.

Dr. Bress' UDC report was included with the entire record that was then reviewed by

Page 3 - REPORT AND RECOMMENDATION

Judith Rose, a Hartford Appeals Specialist. Her report of July 1, 2010 quoted extensively from Dr. Bress' review and evaluation, but also noted that "[t]he medical information made available by Mr. McCloud's own providers does not corroborate his report of limitations in function preventing him from performing occupational activities at a sedentary to light physical demands level." AR 66. She concluded that "although the documentation does support that Mr. McCloud is diagnosed with medical conditions, the record . . . no longer corroborates that he continues to satisfy the policy definition of Disability." AR 61-67. Hartford thus affirmed its decision to terminate benefits on September 2, 2009.

On October 11, 2011 McCloud filed this action challenging Hartford's termination of his long term disability benefits.

## LEGAL STANDARDS

### I. Standard of Review

A denial of benefits by an ERISA plan administrator is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The grant of discretion must be unambiguous. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006) (en banc) (citing Kearney v. Standard Ins. Co., 175 F.3d 1084 (9th Cir. 1999) (en banc)). In this case the parties do not dispute that the Plan grants the administrator discretionary authority and that this Court must review Hartford's decision for an abuse of discretion.

An insurer that acts as both the plan administrator and the funding source for benefits operates under what may be termed a structural conflict of interest. Abatie, 458 F.3d at 965.

Page 4 - REPORT AND RECOMMENDATION

Where the deferential abuse of discretion standard is used and the administrator is operating under a conflict of interest, "that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" Firestone, 489 U.S. at 115; Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 116-17 (2008). The conflict should prove more important "where circumstances suggest a higher likelihood that it affected the benefits decision," but it should prove less important "where the administrator has taken active steps to reduce potential bias and to promote accuracy." Glenn, 554 U.S. at 117.

II. Summary Judgment

The parties have filed cross motions for summary judgment. Traditional summary judgment principles have limited application in ERISA cases governed by the abuse of discretion standard. Nolan v. Heald College, 551 F.3d 1148, 1154 (9th Cir. 2009). "Where, as here, the abuse of discretion standard applies in an ERISA benefits denial case, a motion for summary judgment is, in most respects, merely the conduit to bring the legal question before the district court, and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply." Stephan v. Unam, No. 10-16840 (9th Cir. Sept. 12, 2012) 11077, 11098 (quoting Nolan, 551 F.3d at 1154) (internal quotation marks omitted).

Consideration of a conflict of interest is an exception to this feature of ERISA cases, and "the traditional rules of summary judgment" do apply. Id. "As to issues regarding the nature and impact of a conflict of interest, summary judgment may only be granted if, after viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact." Id. (internal quotation marks omitted). A structural conflict of interest is present in this case because Hartford is both the administrator of the plan and the source of funding for

Page 5 - REPORT AND RECOMMENDATION

the plan. However, McCloud has not presented any evidence of actual bias on the part of any individual or entity at Hartford, or any other evidence outside the record that the Court must view according the traditional rules of summary judgment. Therefore, the Court will review the case for an abuse of discretion, taking the conflict into account as a factor, as discussed above.

## DISCUSSION

In reviewing for an abuse of discretion, an ERISA plan administrator's decision "will not be disturbed if reasonable." Conkright v. Frommert, 103 S.Ct. 1640, 1651 (2010). This reasonableness standard requires deference to the administrator's benefits decision unless it is "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts on the record." Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 667 (9th Cir. 2011).

I. Plaintiff's Claims of Abuse of Discretion

Plaintiff McCloud claims that the numerous medical conditions and diagnoses documented in the record support his claim, and that the only reasonable interpretation of the record is that he is disabled and entitled to long term disability benefits. According to him, Hartford must have "disregarded the opinions of his treating physicians and his subjective complaints of pain and fatigue" because, otherwise, it would have found in his favor; thus, the decision to terminate benefits was an unreasonable abuse of discretion. However, while McCloud gives many examples of the medical reports confirming that he has various severe and co-morbid conditions, he does not provide any evidence that Hardford has ignored these reports

Page 6 - REPORT AND RECOMMENDATION

or his conditions in making a disability determination.[2]

McCloud also contends that Hartford operated under a conflict of interest that contributed to its decision to terminate his benefits. Besides the inherent structural conflict, McCloud identifies "several other factors that constitute conflict of interest on the part of Hartford." Pl.'s Resp. In Opp'n Mot. Summ. J. 3 ECF No. 3. First, he claims that the "administrative record demonstrates that Hartford failed to use a 'truly independent medical examiner or a neutral, independent review,' as required by Abatie." Id. McCloud cites no facts, either from the record or from outside the record, to support this claim.

Second, he claims that "Hartford's denial was based on 'evidence' for which Hartford paid, rather than the full record." Id. McCloud supports this claim with the bare statement that Hartford contracts with and pays physicians to perform file reviews and vocational experts. McCloud does not state which parts of the record Hartford did not consider, and he fails to provide any evidence that the paid physicians and file reviewers did not consider the entire record.

Third, McCloud makes reference to the fact that Dr. Bress of the UDC performed the file review for Hartford in this case. Id. McCloud cites to a district court case, Caplan v. CNA Fin. Corp., 544 F. Supp. 2d 984, 990-92 (N.D. Cal. 2008), which shows that evidence of UDC's relationship with Hartford may be considered in a conflict of interest analysis, but he does not cite to any evidence in the record in this case, nor to any extrinsic evidence currently before the

---

[2] Plaintiff also references his award of Social Security Disability benefits as evidence of his disability under the Plan. However, he admits that this award was made after his administrative appeals had been exhausted, thus it was never part of the record that Hartford used to make its determination. AR 542. The award is not part of the current record, and it will not be considered in the Court's analysis.

Page 7 - REPORT AND RECOMMENDATION

Court. While the Court may consider evidence extrinsic to the record when evaluating a conflict of interest, it cannot consider evidence that is not properly before it in the case at bar. Nolan, 551 F.3d at 1154. Here, there is no evidence of an improper relationship in the record, nor outside the record. The bare fact that Hartford pays for its file reviews, without other evidence that parts of the record were disregarded, is insufficient to find that it abused its discretion.

II. Review of Defendant's Decision for Abuse of Discretion

At each stage of the process, Hartford's decisions have had ample support from the record, including evaluations and reports by McCloud's treating physicians. The original determination of disability for a mental illness, in 2006, was based on his psychiatrist's diagnosis of bipolar disorder and depression. AR 530-35. The determination of a physical disability in 2009 was based on Dr. Suarez's report of his heart condition. AR 266-67. The decision to terminate physical disability eligibility was based on Dr. Suarez's PCE that indicated McCloud had the ability to sit, stand, walk, drive, as well as lift, push or pull up to 20 pounds. AR 198-202, 206-07. On appeal, Dr. Bress and Judith Rose both went back through all of McCloud's medical records, documenting his medical conditions, diagnoses, as well as his physical activity evaluations. AR 61-74. Each report detailed an exhaustive review of the record, and demonstrated that consideration was given to all relevant reports. Id.

For example, Dr. Bress outlined numerous medical conditions, as documented in detail in McCloud's file:

> 3/7/07. Dr. Gaswin, emotional distress, dyspnea from lung cancer, sit eight hours per day, two hours at a time, no standing/walking.
> . . .
> 10/31/07. Dr. Gotleib, Psychiatry. APS, bipolar disorder I, "unable to tolerate any work-related stress," has coronary artery disease, diabetes, COPD, OSA, and BPH, no mention of back pain.

Page 8 - REPORT AND RECOMMENDATION

. . .

5/19/08. Dr. Melnick. Sitting no impairment, standing 10 minutes due to low back pain, walk slowly resting every few minutes, "tries to walk a half mile a day." Lifting 25 pounds maximum.

. . .

5/20/08. Dr. Thomas. TIA in March, low back pain past couple of years.

. . .

8/13/08. Dr. Sewing. A boil on his back, on his buttock was noted, noted low back pain "for years," worsening, cannot bend. PET scan was negative for cancer.

8/13/08. MRI of the L-S spine was normal.

. . .

1/30/08. Hospitalized for cardiac catheterization.

2/2/09 Dr. Suarez. Diabetes, stress test on Friday, had angio and stenting of the left coronary artery. "Patient discharged yesterday and went directly to Klamayo Casino where he won $100." No change in his breathing or chronic back pain or groin pain. Wife says he is very grumpy.

2/26/09. Dr. Suarez, cardiac problems prevent him from physical activity due to dyspnea.

5/6/09. Dr. Narinzdan, Cardiovascular. Based on the cardiovascular, he can sit four hours at a time, eight hours total, stand two hours 0.5 at a time, walk two hours 0.5 at time, occasional bend/stoop, lifting.

. . .

8/4/09. Dr. Suarez. Medication follow up, new narcotic contract signed, trying to lose weight, more tired. His wife had knee surgery, has to do more around the house, and complains of back pain, "no apparent distress." Diagnosis was joint pain and diabetes, CAD, and edema. Weight was 229.

. . .

8/19/09. Unreadable signature, APS, sit four hours per day, half-hour at a time, stand for hours per day, quarter to half-hour at a time, walk three hours per day, quarter to half-hour at a time, driving two hours, lifting 20-50 pounds, pushing 50 pounds, occasional balance, stooping, above shoulder work, no below waist work.

. . .

11/6/09. Dr. McCord, Rheumatology Consult, back pain, knee pain, MRI 8/9, "did not really show any pathology." Fatigue is moderate. Normal hand exam, full range of motion, no synovitis noted in the knee joints. Cervical and lumbar spine had normal range of morion. Diagnosis id back pain "probably due to a very mild lumbar degenerative joint disease, but

> for most part from fibromyalgia." No tender points of fibromyalgia were noted. "No local tenderness."
> . . .
> 3/23/10. Dr. Kucinska, Psychiatry. Letter, history is somewhat difficult to follow. Reports upper extremity weakness, memory problems, and depression. He stated in 1997, he had a TIA and "forgot how to use right upper extremity." On long-term disability for "psychological factors." . . . Has a cardiac stent, history of lung cancer, no chemo or radiation needed, depression with bipolar, suicidal attempt, no restriction based on cognitive issues, depression is primary problem.

AR 67-70.

The report also indicated that Dr. Bress spoke to Dr. McCord, one of McCloud's treating physicians, on the telephone: "[C]laimant could easily work sedentary lifting 20 pounds, sitting two hours at a time with brief breaks at that point. . . standing and walking should only be 20 minutes at a time." AR 70-71. Dr. Bress's report then reiterated several of the medical reports already reviewed, especially those that indicated that depression and bipolar disorder are the major issues, those that made no mention of back pain, and those that showed that McCloud could do some physical activities such as sitting, standing, lifting, and walking, going to the casino, bowling, and fishing.

Based on these records in particular, Dr. Bress found that the claimant was capable of full-time light work with frequent sitting, standing, and walking and maximum lifting of 20 pounds. . . occasional bending, crouching, stooping, and kneeing. Lift, carry, push, pull would be 20 pounds, driving would be unrestricted. . . No restriction of reaching at waist level, above shoulder level, or below waist level, no restriction of handling, fingering, or feeling. . . [He] should have change of position at least once per hour from either sitting or standing/walking. Sitting would be unrestricted eight hours per day. . . standing and walking combination for four hours per day with change of position allowed once per hour. AR 73-74.

Page 10 - REPORT AND RECOMMENDATION

An addendum noted two additional new reports, one from Dr. Villanueva, which "stated that the primary diagnosis was depression," and "no overt pain behavior, sitting endurance was adequate," and one from Dr. Stalin, which included a recommendation for hernia surgery. These reports did not change Dr. Bress' opinion that "the claimant is capable of full-time light work," except that the hernia surgery would result in "approximately four weeks of incapacity post op" during which time he would not be able to work. AR 74.

Even if the court disagrees with the ultimate decision, deference must be given to the administrator unless it is clearly unreasonable. While there may have been evidence supporting McCloud's claim of disability, there was also substantial evidence that he was capable of full-time light work, as Dr. Bress and Judith Rose ultimately decided. Based on the record, therefore, Hartford's decision cannot be determined to be illogical, implausible, or without support from the record. This Court will not disturb Hartford's reasonable interpretation of the record because it did not abuse its discretion.

## CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment should be DENIED, and defendant's motion for summary judgment should be GRANTED.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. Objections to this Report and Recommendation, if any, are due fourteen (14) days from today's date. If objections are filed, any responses to the objections are due fourteen (14) days from the date of the objection. See Fed. R. Civ. P. 72, 6.

Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 20 day of September, 2012

_____
MARK D. CLARKE
United States Magistrate Judge